**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

JASON MARTIN DELPRIORE,

               Plaintiff,

     v.

JUSTIN MCCLURE, JAMIE             Case No. 3:18-cv-00113-SLG
SHAVER, RAYNE REYNOLDS,
SHAUN HENRY, MIA BADILLO, and
TAYLOR WEBSTER,

               Defendants.

## ORDER RE MOTION FOR SUMMARY JUDGMENT BY JUSTIN MCCLURE AND JAMIE SHAVER

Before the Court at Docket 59 is Defendants Justin McClure and Jamie Shaver's ("Defendants") Motion for Summary Judgment. Plaintiff Jason Martin DelPriore responded in opposition at Docket 70. Defendants replied at Docket 72 and filed an accompanying addendum and declaration at Docket 73 and Docket 74, respectively. Plaintiff replied at Docket 75. Oral argument was not requested and was not necessary to the Court's decision.

## FACTS

The events giving rise to the instant case unfolded on January 14, 2018, in the EasyPark parking garage at Fifth Avenue and B Street in downtown Anchorage.[1] The parking garage has six levels; the sixth level has an area

---

[1] Docket 1 at 6; Docket 60 at 2.

referred to as "the Rooftop," which is available for the public's use.[2]  The Rooftop contains park benches, a basketball court, and an ice rink.[3]  The EasyPark garage is equipped with security cameras in the stairwells and lobby areas; the Rooftop has a single-angle security camera.[4]  EasyPark parking services representatives patrol the parking area and report any suspected criminal activity to security via dispatch.[5]  Security is provided by NANA Management Services, Inc. ("NMS").[6]

Around lunchtime on January 14, 2018, Jason DelPriore entered the EasyPark parking garage on the fourth level via a skybridge from an adjacent mall.[7] According to Mr. DelPriore, he was smoking on the fourth floor of the parking garage when he was approached by "two representatives" who told him the smoking section was on the third floor.[8]  He went down to the third floor and smoked a cigarette before heading up to the Rooftop.[9]  Mr. DelPriore reports that he was sitting on a bench on the Rooftop when two security guards, Mr. McClure and Mr. Shaver, "came up to [him] and told [him], basically in a rude manner, that

---

[2] Docket 64 at 2, ¶ 2 (Yap Dec.).

[3] Docket 64 at 2, ¶ 2 (Yap Dec.).

[4] Docket 64 at 3, ¶ 3 (Yap Dec.).

[5] Docket 64 at 1–2, ¶ 1 (Yap Dec.).

[6] Docket 62 at 1–2, ¶ 1 (McClure Dec.); Docket 63 at 1–2, ¶ 1 (Shaver Dec.).

[7] Docket 59-9 at 8, 28:10–21 (DelPriore Dep.).

[8] Docket 59-9 at 8, 28:18–24 (DelPriore Dep.).

[9] Docket 59-9 at 9, 30:8–22 (DelPriore Dep.).

Case No. 3:18-cv-00113-SLG, *DelPriore v. McClure, et al.*
Order re Motion for Summary Judgment
Page 2 of 33

it – it was, 'Beat it. It's time to leave.'"[10]   Mr. DelPriore states that prior to their arrival, he had been "singing to God" and worshipping but that he was sitting on the bench "eating black licorice" when they approached him.[11]   After he was asked to leave, Mr. DelPriore queried whether Defendants McClure and Shaver had a warrant and informed them he was waiting on a friend.[12]   According to Mr. DelPriore, Mr. McClure and Mr. Shaver insisted that he was trespassing on private property, which Mr. DelPriore disputed.[13]   He told Defendants that he had not done anything wrong and challenged them to "make [him] leave."[14]   Mr. DelPriore contends that "then what transpired next was some elbows and knees."[15]   He states that he pushed his arm out to "keep them at bay for a second," and that when the second security guard "got involved, [he] stiff-armed him," after which he was "slammed into," and "got attacked with elbows and knees . . . [k]nees to my crotch."[16]   He explains that "after getting hit in the groin . . . [he] believe[s] [he] was

---

[10] Docket 59-9 at 11, 38:11–14 (DelPriore Dep.).

[11] Docket 59-9 at 13, 46:14–48:16 (DelPriore Dep.); *see also* Docket 59-9 at 16–17, 58:24–59:16, 61:1–10 (DelPriore Dep.).

[12] Docket 59-9 at 11, 40:2–9 (DelPriore Dep.).

[13] Docket 59-9 at 11, 40:10–17 (DelPriore Dep.).

[14] Docket 59-9 at 23, 86:4–25 (DelPriore Dep.).

[15] Docket 59-9 at 11, 40:10–17 (DelPriore Dep.).

[16] Docket 59-9 at 11, 40:25–41:16 (DelPriore Dep.).

Case No. 3:18-cv-00113-SLG, *DelPriore v. McClure, et al.*
Order re Motion for Summary Judgment
Page 3 of 33

slammed to the ground . . . [he] tried to stand back up" but Defendants McClure and Shaver put him in handcuffs.[17]

Mr. DelPriore contends that in the process of handcuffing him, the security guards "assaulted [him] with blows to the head from elbows and knees to the groin and stomach" and tried to "break [his] hands by bending and mashing [his] face into the ground."[18] He states that when he "was in the handcuffs there's some excessiveness . . . the rending of [his] wrist . . . was uncalled for . . . [and] . . . caused the damage" to his hands.[19] Mr. DelPriore maintains that he "was never given no lawful order to leave by anybody" and that he had "never been told to leave."[20] Mr. DelPriore maintains that he "never pushed nobody . . . never contacted anybody, besides [his] stiff-arm to keep them from closing the distance with elbow and knees . . . didn't throw a single punch . . . didn't throw an elbow, a knee . . . didn't combat in any offensive manner."[21]

A security camera on the Rooftop captured video (without audio) of the incident.[22] The footage shows Mr. DelPriore sitting on a bench on the Rooftop as

---

[17] Docket 59-9 at 24, 91:10–19 (DelPriore Dep.).

[18] Docket 1 at 6.

[19] Docket 59-9 at 26, 99:13–22 (DelPriore Dep.).

[20] Docket 59-9 at 12, 42:21–22 (DelPriore Dep.); Docket 59-9 at 21, 77:19–20 (DelPriore Dep.); Docket 59-9 at 79:2–6 (DelPriore Dep.) ("I've come to find out that they were told by somebody else that I was told to leave which was . . . odd, because that's not what happened.").

[21] Docket 59-9 at 23, 88:11–25 (DelPriore Dep.).

[22] Docket 59-11 (Ex. I).

Case No. 3:18-cv-00113-SLG, *DelPriore v. McClure, et al.*
Order re Motion for Summary Judgment
Page 4 of 33

Mr. McClure and Mr. Shaver approach him.[23]  When Defendants McClure and Shaver reach him, the video shows Mr. DelPriore stand up and maintain a respectful distance.  He follows the guards in the direction of the exit and after a few steps, they surround him on either side.  After that, the quality of the footage, along with the lighting, make it difficult to discern what happened, but a physical altercation ensues wherein Mr. DelPriore is forced backwards towards the wall and ends up face down on the ground.[24]

According to Defendants McClure and Shaver, they responded to the Fifth Avenue EasyPark parking garage around 12:45 p.m. on January 14, 2018, to assist with a "white male [who] had been refusing to leave the parking garage."[25]  Upon arrival, they met with the parking services representative who had called security, Rod Yap.[26]  Mr. Yap informed Mr. McClure and Mr. Shaver that he had spoken with an individual and asked him to leave, repeatedly, with no success.[27]  Mr. Yap contends that the individual was later identified as Mr. DelPriore.[28]  Dispatch then informed Mr. McClure and Mr. Shaver that Mr. DelPriore had

---

[23] Docket 59-11.  The incident occurs between 3:30 and 6:00 minutes.

[24] Docket 59-11.

[25] Docket 62 at 3, ¶ 4 (McClure Dec.); Docket 63 at 3, ¶ 4 (Shaver Dec.).

[26] Docket 64 at 3–4, ¶ 6 (Yap Dec.); Docket 62 at 3, ¶ 4 (McClure Dec.); Docket 63 at 3, ¶ 4 (Shaver Dec.).

[27] Docket 64 at 3–4, ¶ 6 (Yap Dec.); Docket 62 at 3, ¶ 4 (McClure Dec.); Docket 63 at 3, ¶ 4 (Shaver Dec.).

[28] Docket 64 at 3, ¶ 4 (Yap Dec.).

Case No. 3:18-cv-00113-SLG, *DelPriore v. McClure, et al.*
Order re Motion for Summary Judgment
Page 5 of 33

appeared in the Rooftop area on the sixth level.[29]  Mr. McClure and Mr. Shaver

went to the sixth level where they encountered Mr. DelPriore.[30]  They told Mr.

DelPriore that he had been asked several times to leave, and that he was now

trespassing on private property.[31]  When he would not leave, they arrested him.

After Defendants McClure and Shaver had restrained Mr. DelPriore in handcuffs,

Mr. McClure asked EasyPark dispatch to call the police, who arrived at

approximately 1:20 p.m. and took Mr. DelPriore into custody.[32]  Mr. DelPriore was

cited for trespassing and disorderly conduct.[33]  The charges were later

dismissed.[34]

Defendants contest Mr. DelPriore's account of his arrest.[35]  However, for

purposes of summary judgment, the "evidence of the nonmovant is to be believed,

---

[29] Docket 62 at 3, ¶ 4 (McClure Dec.); Docket 63 at 3, ¶ 4 (Shaver Dec.).

[30] Docket 62 at 3, ¶ 4 (McClure Dec.); Docket 63 at 3, ¶ 4 (Shaver Dec.).

[31] Docket 62 at 4, ¶¶ 5–6 (McClure Dec.); Docket 63 at 4, ¶¶ 5–6 (Shaver Dec.)

[32] Docket 62 at 5, ¶ 8 (McClure Dec.); Docket 63 at 5, ¶ 8 (Shaver Dec.).

[33] Docket 59-12 at 1.

[34] Docket 60 at 12.

[35] Defendants contend that "Mr. DelPriore stood up and closed the distance" with Mr. McClure  and "began making statements  about God that did not make sense."  Docket 62 at 3–4, ¶¶ 5–6 (McClure Dec.); Docket 63 at 3–4, ¶¶ 5–6 (Shaver Dec.).  They state that as Mr. DelPriore continued to close the distance between himself and Mr. McClure, Mr. McClure raised his hand, nudged Mr. DelPriore's chest, and told him to step back. Docket 62 at 4, ¶ 6 (McClure Dec.); Docket 63 at 4, ¶ 6 (Shaver Dec.).  Defendants relay that Mr. DelPriore "swatted" Mr. McClure's hand away and "moved within six inches" of Mr. Shaver, who put his own hand up and asked Mr. DelPriore to step back. Mr. Shaver recalls that he "told Mr. DelPriore several times that he needed to leave the parking garage," as did Mr. McClure, but that Mr. DelPriore refused to leave and continued to argue with them.  Docket 62 at 4, ¶ 6 (McClure Dec.); Docket 63 at 4, ¶ 6

Case No. 3:18-cv-00113-SLG, *DelPriore v. McClure, et al.*
Order re Motion for Summary Judgment
Page 6 of 33

and all justifiable inferences are to be drawn in his favor."[36] Thus, for purposes of this motion, the Court views the disputed facts in favor of Mr. DelPriore.

On March 9, 2018, Mr. DelPriore commenced this action pursuant to 42 U.S.C. § 1983, alleging, *inter alia*, that he "had been singing to God worshiping in [his] personal way to worship and [Mr. McClure and Mr. Shaver] . . . violated [his] civil rights acting maliciously by using violence to stop [him] from worshiping [his] God."[37] Mr. DelPriore further alleged that he was "assaulted and battered" when Mr. Shaver and Mr. McClure "unlawfully detained [him] by excessive force causing physical and emotional damages."[38]

On October 22, 2018, the Court screened Mr. DelPriore's claims and found that his allegations that Defendants McClure and Shaver prohibited Mr. DelPriore

---

(Shaver Dec.). Both Mr. McClure and Mr. Shaver report that:

> [Mr. DelPriore] stepped in close to Mr. McClure in a lunging manner, at which point Mr. McClure pushed him away. Mr. DelPriore then became combative and pushed [Mr. Shaver]. Mr. McClure and [Mr. Shaver], in accordance with [their] training, knew it was time to restrain Mr. DelPriore because he had begun to act violently. Because it was winter the ground on The Rooftop was covered in snow and ice. This slippery surface caused all three of [them] to fall to the ground when Mr. McClure and [Mr. Shaver] attempted to restrain Mr. DelPriore. Mr. DelPriore was face down and Mr. McClure got onto Mr. DelPriore's back. Mr. DelPriore continued to struggle but [they] were able to fit wrist restraints on him. During the scuffle Mr. DelPriore received a few minor abrasions.

Docket 62 at 4–5, ¶ 7 (McClure Dec.); Docket 63 at 4–5, ¶ 7 (Shaver Dec.).

[36] *Moldex-Metric, Inc. v. McKeon Prods., Inc.*, 891 F.3d 878, 881 (9th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

[37] Docket 1 at 7.

[38] Docket 1 at 6.

Case No. 3:18-cv-00113-SLG, *DelPriore v. McClure, et al.*
Order re Motion for Summary Judgment
Page 7 of 33

from worshiping at EasyPark's facility plausibly stated a claim for relief under the First Amendment (Claim 3) and that his allegations that Defendants McClure and Shaver used excessive force against him plausibly stated a claim under the Fourth Amendment (Claim 1).[39]  Defendants now move for summary judgment on both claims.[40]

## LEGAL STANDARDS

### I.    Motion for Summary Judgment

Federal Rule of Civil Procedure 56(a) directs a court to grant summary judgment if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the non-moving party and a dispute is "material" if it could affect the outcome of the suit under the governing law.[41]  When considering a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."[42]

---

[39] Docket 12 at 4–6.

[40] Docket 59.  Mr. McClure and Mr. Shaver concede—for the purposes of this motion— that "through the NMS contract to provide security services to [Anchorage Community Development Authority], they acted under color of state law."  Docket 60 at 13.

[41] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

[42] *Moldex-Metric, Inc.*, 891 F.3d at 881 (alteration in original) (quoting *Anderson*, 477 U.S. at 255).

Case No. 3:18-cv-00113-SLG, *DelPriore v. McClure, et al.*
Order re Motion for Summary Judgment
Page 8 of 33

"The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of fact for trial."[43] However, "[w]hen the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'"[44] Once the moving party has met its initial burden, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading," but must provide evidence that "set[s] forth specific facts showing that there is a genuine issue for trial."[45] Thus, although a district court may find that a "complaint stated a claim under § 1983 at the preliminary stages of the litigation," a plaintiff cannot rest on those pleadings at summary judgment and must "affirmatively demonstrate that there is a genuine issue of material fact for trial."[46]

## II.    First Amendment Retaliation Claim

The First Amendment to the United States Constitution provides that the government shall not "prohibit[] the free exercise" of religion.[47] Moreover, the First Amendment:

---

[43] *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).

[44] *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

[45] *Id.* (quoting Fed. R. Civ. P. 56(e)).

[46] *Whitman v. Nesic*, 368 F.3d 931, 933–34 (7th Cir. 2004) (dismissing plaintiff's argument that "since a district judge found his complaint stated a claim under § 1983 at the preliminary stages of the litigation, his complaint must also survive summary judgment").

[47] *See generally Widmar v. Vincent*, 454 U.S. 263 (1981) (recognizing religious worship at public university protected by First Amendment).

Case No. 3:18-cv-00113-SLG, *DelPriore v. McClure, et al.*
Order re Motion for Summary Judgment
Page 9 of 33

"prohibits government officials from subjecting an individual to retaliatory actions" for engaging in protected speech. If an official takes adverse action against someone based on that forbidden motive, and "non-retaliatory grounds are in fact insufficient to provoke the adverse consequences," the injured person may generally seek relief by bringing a First Amendment claim.[48]

To state a First Amendment retaliation claim, a plaintiff must allege "that (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct."[49] And "to prevail on such a claim, a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury,'" i.e., "it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive."[50]

## A. Retaliatory Arrest Under the First Amendment

To establish the required causal connection for a retaliatory arrest claim under the First Amendment, a plaintiff must generally plead and prove the absence of probable cause for the arrest.[51] "'[I]f that showing [of no probable cause] is made, the defendant can prevail only by showing that the [arrest] would have been

---

[48] *Nieves v. Bartlett*, 139 S.Ct. 1715, 1722 (2019) (quoting *Hartman v. Moore*, 547 U.S 250, 256 (2006)).

[49] *O'Brien v. Welty,* 818 F.3d 920, 932 (9th Cir. 2016).

[50] *Bartlett*, 139 S.Ct. at 1722 (quoting *Hartman*, 547 U.S. at 259–60).

[51] *Bartlett*, 139 S.Ct. at 1725.

Case No. 3:18-cv-00113-SLG, *DelPriore v. McClure, et al.*
Order re Motion for Summary Judgment
Page 10 of 33

initiated without respect to retaliation'" for the protected First Amendment conduct.[52] But, "[a]bsent such a showing, a retaliatory arrest claim fails" unless the plaintiff fits into a "narrow qualification . . . for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so."[53] In such cases, "the no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been."[54]

### B.    Probable Cause

"Probable cause exists if the arresting officers 'had knowledge and reasonably trustworthy information of facts and circumstances sufficient to lead a prudent person to believe that [the arrestee] had committed or was committing a crime.'"[55]

> To determine whether an officer had probable cause for an arrest, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause. Because probable cause deals with probabilities and depends on the totality of the circumstances, it is a fluid concept that is not readily, or even usefully, reduced to a neat set of legal rules.   It requires only a

---

[52] *Id.* at 1725 (quoting *Lozman v. Riviera Beach*, 138 S.Ct. 1945, 1952–53 (2018) (third alteration in original)).

[53] *Id.* at 1727.

[54] *Id.*

[55] *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1097–98 (9th Cir. 2013) (alteration in original) (quoting *Maxwell v. Cty. of San Diego*, 697 F.3d 941, 951 (9th Cir. 2012)).

Case No. 3:18-cv-00113-SLG, *DelPriore v. McClure, et al.*
Order re Motion for Summary Judgment
Page 11 of 33

probability or substantial chance of criminal activity, not an actual showing of such activity.  Probable cause is not a high bar.[56]

## III.     Fourth Amendment Excessive Force Claim

"*[A]ll* claims that law enforcement officers have used excessive force— deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard."[57]

"In Fourth Amendment excessive force cases, we examine whether police officers' actions are objectively reasonable given the totality of the circumstances."[58]  "Whether a use of force was reasonable will depend on the facts of the particular case, including, but not limited to, whether the suspect posed an immediate threat to anyone, whether the suspect resisted or attempted to evade arrest, and the severity of the crime at issue."[59]  The Ninth Circuit has emphasized that the most important factor is "whether the suspect posed an immediate threat to the safety of the officers or others."[60]

Moreover, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the

---

[56] *District of Columbia v. Wesby*, 138 S.Ct. 577, 586 (2018) (internal quotations and citations omitted).

[57] *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis in original).

[58] *Nehad v. Browder*, 929 F.3d 1125, 1132 (9th Cir. 2019).

[59] *Id.*

[60] *S.B. v. Cty. of San Diego*, 864 F.3d 1010, 1013 (9th Cir. 2017).

Case No. 3:18-cv-00113-SLG, *DelPriore v. McClure, et al.*
Order re Motion for Summary Judgment
Page 12 of 33

20/20 vision of hindsight."[61]  "Only information known to the officer at the time the conduct occurred is relevant."[62]  Officers "need not avail themselves of the least intrusive means of responding to an exigent situation; they need only act within that range of conduct we identify as reasonable."[63]

## IV.  Qualified Immunity

The doctrine of qualified immunity shields government actors from civil liability under § 1983 if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[64]  To determine whether an individual is entitled to qualified immunity, a court must determine "(1) whether the officer's conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the incident."[65]  A court may "exercise [its] sound discretion in deciding which of the two prongs of the

---

[61] *Graham v. Connor*, 490 U.S. 386, 396 (1989).

[62] *Nehad*, 929 F.3d at 1132.

[63] *Hughes v. Kisela*, 841 F.3d 1081, 1087 (9th Cir. 2016), *superseded on other grounds in Kisela v. Hughes*, 138 S. Ct. 1148 (2018).

[64] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[65] *Castro v. Cty. of L.A.*, 833 F.3d 1060, 1066 (9th Cir. 2016) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

Case No. 3:18-cv-00113-SLG, *DelPriore v. McClure, et al.*
Order re Motion for Summary Judgment
Page 13 of 33

qualified immunity analysis should be addressed first."[66]   Qualified immunity is applicable unless both prongs of the inquiry are satisfied.[67]

"Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct."[68]   Although there need not be "a case directly on point for a right to be clearly established, existing precedent must have placed the . . . constitutional question beyond debate."[69]

> Use of excessive force is an area of the law "in which the result depends very much on the facts of each case," and thus police officers are entitled to qualified immunity unless existing precedent "squarely governs" the specific facts at issue.  Precedent involving similar facts can help move a case beyond the otherwise "hazy border between excessive and acceptable force" and thereby provide an officer notice that a specific use of force is unlawful.[70]

---

[66] *Pearson*, 555 U.S. at 236 (noting that analyzing first then second prong, while not mandatory, "is often beneficial[,] . . . promotes the development of constitutional precedent and is especially valuable with respect to questions that do not frequently arise in cases in which a qualified immunity defense is unavailable"); *see also Jessop v. City of Fresno*, 918 F.3d 1031, 1035 (9th Cir. 2019).

[67] *See Pearson*, 555 U.S. at 232 ("Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.").

[68] *Kisela v. Hughes*, 138 S.Ct. 1148, 1152 (2018) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)).

[69] *Id*. (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)).

[70] *Id*. at 1153 (quoting *Mullenix v. Luna*, 136 S. Ct. 305 (2015)).

Case No. 3:18-cv-00113-SLG, *DelPriore v. McClure, et al.*
Order re Motion for Summary Judgment
Page 14 of 33

"[Q]ualified immunity is a question of law, not a question of fact."[71]  As such, it is ordinarily decided by the court before trial.[72]  However, when "historical facts material to the qualified immunity determination are in dispute," the trial court should submit the factual dispute to a jury.[73]  Once the disputed facts are determined, then the judge decides whether qualified immunity applies.[74]

## DISCUSSION

### I.  Probable Cause

Defendants contend that Mr. McClure and Mr. Shaver had probable cause to arrest Mr. DelPriore for trespassing.[75]  They note that under Anchorage Municipal Code ("AMC") 08.45.010(A)(2)(d), a person commits the crime of criminal trespass on private property if the person "[k]nowingly enters or remains on private business or commercial property . . . [a]fter the person has been requested to leave by someone with the apparent authority to do so."[76]  Relatedly, under AMC 08.45.101(A)(3)(b), a person commits the crime of trespassing on public property if the person "[k]nowingly enters or remains on public premises or

---

[71] *Torres v. City of L.A.*, 548 F.3d 1197, 1210 (9th Cir. 2008).

[72] *Hunter v. Bryant*, 502 U.S. 224, 228 (1991).

[73] *Torres*, 548 F.3d at 1211; *see also Newmaker v. City of Fortuna*, 842 F.3d 1108, 1116 (9th Cir. 2016) ("Summary judgment is not appropriate in § 1983 deadly force cases that turn on the officer's credibility that is genuinely in doubt.").

[74] *See Morales v. Fry*, 873 F.3d 817, 823–24 (9th Cir. 2017).

[75] Docket 60 at 17.

[76] Docket 60 at 19.

Case No. 3:18-cv-00113-SLG, *DelPriore v. McClure, et al.*
Order re Motion for Summary Judgment
Page 15 of 33

property . . . after the person has been requested to leave by someone with the apparent authority to do so."[77]

Defendants assert that Mr. McClure and Mr. Shaver had "probable cause to believe that Mr. DelPriore trespassed on public property."[78] Specifically, Defendants contend that Mr. Yap, a person with the "apparent authority" to ask someone to leave, had done just that, but that Mr. DelPriore refused to leave.[79] Mr. Yap then conveyed that information to Mr. McClure and Mr. Shaver, who thus had probable cause to believe that Mr. DelPriore had been asked to leave public property by someone with the authority to do so.[80] Defendants acknowledge that Mr. DelPriore contests ever being asked to leave, but maintain that "[w]hen police have probable cause to arrest one person but reasonably mistake a second person for the first, their arrest of the second person is nonetheless a valid arrest."[81] Defendants add that, after Mr. McClure and Mr. Shaver approached Mr. DelPriore, he again refused to leave and "engaged Mr. McClure and Mr. Shaver in a manner they believed combative."[82]

---

[77] Docket 60 at 19.

[78] Docket 60 at 20.

[79] Docket 60 at 20.

[80] Docket 60 at 20–21.

[81] Docket 60 at 21 (citing *Hill v. Cal.*, 401 U.S. 797, 802–03 (1971)).

[82] Docket 60 at 22.

Case No. 3:18-cv-00113-SLG, *DelPriore v. McClure, et al.*
Order re Motion for Summary Judgment
Page 16 of 33

In his opposition to Defendants' motion for summary judgment, Mr. DelPriore disputes that he was trespassing. He maintains that the park was open for public use and that he was present during hours of operation. He contends that the defendants have submitted no sworn statements asserting that there was "any lawful reason to leave public property"[83] and disputes that he was "given a lawful order to leave."[84] Mr. DelPriore challenges Mr. Yap's representation that he asked dispatch to call security, maintaining that the logs provided in discovery "do not depict any such log of activity reported."[85]

In response, Defendants acknowledge that the day shift log is not an EasyPark record, as Mr. McClure and Mr. Shaver stated in their declaration, but add that the "day shift log is in fact a record from [NMS], and was disclosed as such to Mr. DelPriore."[86] They maintain that the day shift log "reflects that Mr. McClure and Mr. Shaver responded to a call" on January 14, 2018.[87]

In assessing probable cause, the Court considers whether Defendants McClure and Shaver "'had knowledge and reasonably trustworthy information of

---

[83] Docket 70 at 2.

[84] Docket 70 at 3.

[85] Docket 70 at 2. Mr. DelPriore also emphasizes that Mr. Shaver's declaration was unsigned and objects to its use. Mr. Shaver later provided an identical, signed, declaration. Docket 71-1.

[86] Docket 72 at 3.

[87] Docket 72 at 4.

Case No. 3:18-cv-00113-SLG, *DelPriore v. McClure, et al.*
Order re Motion for Summary Judgment
Page 17 of 33

facts and circumstances sufficient to lead a prudent person to believe that [Mr. DelPriore] had committed or was committing a crime.'"[88]

Mr. Yap, Mr. McClure, and Mr. Shaver each submitted a declaration confirming that Defendants McClure and Shaver were called to the EasyPark garage on information that a white male was refusing to leave the parking garage.[89] Mr. Yap confirms that he told Mr. McClure and Mr. Shaver that he had asked Mr. DelPriore to leave, and that Mr. DelPriore had refused.[90] Although Mr. DelPriore contends that the "day shift logs from Jan. 14, 2018 do not depict any such log of activity reported," the day shift logs clearly show a 12:45 p.m. request to Mr. McClure and Mr. Shaver that states: "SECURITY REQUEST – DISPATCHED TO POST 2, 6th FLOOR GARAGE – WMA REFUSED TO LEAVE."[91]

Mr. DelPriore maintains that he was never asked to leave, but Defendants are correct that the Supreme Court has held that "when the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is  a valid arrest."[92]  Thus, even

---

[88] *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1097–98 (9th Cir. 2013) (quoting *Maxwell v. Cty. of San Diego*, 697 F.3d 941, 951 (9th Cir. 2012)).

[89] Docket 64 at 3, ¶ 5 (Yap Dec.); Docket 62 at 3, ¶ 4 (McClure Dec.); Docket 63 at 3, ¶ 4 (Shaver Dec.).

[90] Docket 64 at 3–4, ¶ 6 (Yap Dec.).

[91] Docket 59-10 at 1.

[92] *Hill v. California*, 401 U.S. 797, 802–03 (1971) (quoting *People v. Hill*, 446 P.2d 521, 523 (Cal. 1968)).

Case No. 3:18-cv-00113-SLG, *DelPriore v. McClure, et al.*
Order re Motion for Summary Judgment
Page 18 of 33

accepting as true that Mr. Yap never asked Mr. DelPriore to leave the premises, the record before the Court establishes that Mr. McClure and Mr. Shaver had been told that a white male on the Rooftop of the parking garage had been asked to leave and was refusing to do so. Upon reaching the roof, they encountered Mr. DelPriore, a white male.[93] The Court finds that, even assuming Defendants were mistaken as to the identity of Mr. DelPriore, it was a reasonable mistake and Mr. McClure and Mr. Shaver had probable cause to believe that Mr. DelPriore was trespassing.

Moreover, it is undisputed that Mr. McClure and Mr. Shaver asked Mr. DelPriore to leave; as security guards for EasyPark, they too had the "apparent authority" to ask Mr. DelPriore to do so. Thus, once Defendants asked Mr. DelPriore to leave and he refused to do so, Defendants had probable cause to arrest him for trespassing. The Court finds that no reasonable jury could conclude otherwise.

### 2. Retaliatory Arrest Under the First Amendment

Defendants contend that Mr. DelPriore's claim of retaliatory arrest under the First Amendment fails as a matter of law because Mr. McClure and Mr. Shaver had probable cause to arrest Mr. DelPriore for trespassing.[94] Moreover, Defendants

---

[93] Docket 46-1.

[94] Docket 60 at 17.

Case No. 3:18-cv-00113-SLG, *DelPriore v. McClure, et al.*
Order re Motion for Summary Judgment
Page 19 of 33

contend that Mr. DelPriore did not engage in First Amendment protected activity,[95] and did not show that Defendants' conduct would have chilled a person of ordinary firmness from continuing to engage in the protected activity, or that Defendants intended to suppress Mr. DelPriore's religious activity.[96]  In opposition, Mr. DelPriore maintains that he had "notified these defendants and warned of Gods [sic] judgment for what was to follow."[97]

The Supreme Court has held that a plaintiff must show the absence of probable cause to maintain a retaliatory arrest claim under the First Amendment and that "[a]bsent such a showing, a retaliatory arrest claim fails," unless plaintiff fits into a "narrow qualification . . . for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so."[98]  A plaintiff falls within the exception to the no-probable-cause requirement for a retaliatory arrest claim under the First Amendment where he "presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been."[99]

As discussed *supra*, the Courts finds that Mr. McClure and Mr. Shaver had probable cause to arrest Mr. DelPriore;  accordingly, Mr. DelPriore's retaliatory

---

[95] Docket 60 at 23–25.

[96] Docket 60 at 25–29.

[97] Docket 70 at 3.

[98] *Nieves v. Bartlett*, 139 S.Ct. 1715, 1725, 1727 (2019).

[99] *Id.* at 1727.

Case No. 3:18-cv-00113-SLG, *DelPriore v. McClure, et al.*
Order re Motion for Summary Judgment
Page 20 of 33

arrest claim under the First Amendment fails as a matter of law. Mr. DelPriore has not presented any evidence that similarly situated individuals were not arrested, and therefore does not qualify for the narrow exception to the no-probable-cause requirement established by the Supreme Court in *Nieves v. Bartlett*.[100]

Because the Court finds that Mr. DelPriore's retaliatory arrest claim fails as a matter of law, it need not reach the questions of whether Mr. DelPriore was engaged in constitutionally protected speech, whether Defendants' actions would chill a person of ordinary firmness from engaging in that activity, or whether the protected activity was a motivating factor in Defendants' conduct.

### 3. Excessive Force

Defendants contend that Mr. DelPriore's Fourth Amendment excessive force claim fails as a matter of law because Mr. McClure and Mr. Shaver "used a reasonable amount of force to restrain Mr. DelPriore."[101] Defendants rely on the Ninth Circuit's decision in *Luchtel v. Hagemann* to argue that under the totality of the circumstances, and considering the relevant factors—the severity of the crime, whether the suspect was resisting arrest, and whether the suspect posed a threat—Defendants' use of force against Mr. DelPriore was objectively reasonable.[102]

---

[100] *Id.* at 1725.

[101] Docket 60 at 29–33.

[102] Docket 60 at 31 (citing *Luchtel v. Hagemann*, 623 F.3d 975 (9th Cir. 2010)).

Case No. 3:18-cv-00113-SLG, *DelPriore v. McClure, et al.*
Order re Motion for Summary Judgment
Page 21 of 33

In *Luchtel*, two police officers apprehended the plaintiff, who was high on crack cocaine, suicidal, and delusional.[103] The officers used force to subdue and detain her; the plaintiff suffered a dislocated shoulder and torn shoulder ligaments as well as bruising, swelling, and abrasions on her arms and body.[104] The plaintiff contended that the officers "held [her] to the floor for at least ten minutes while handcuffed with a broken arm and dislocated shoulder."[105] By her own admission, when the police officers attempted to restrain her, the plaintiff did "everything [she] could to keep [the officers] from handcuffing [her]" as she was under the delusion that they were trying to kill her.[106] Among other things, she used her 67-year old neighbor as a human shield, accidentally tackling her to the floor and causing her bruises. The neighbor confirmed that the plaintiff was kicking and forcefully trying to break free.[107]

The Ninth Circuit affirmed the district court's grant of summary judgment in favor of the defendants on the plaintiff's excessive force claim, concluding that "under the totality of the circumstances, and even viewing the evidence in the light most favorable to [the plaintiff], the officers' use of force in arresting and detaining

---

[103] *Luchtel v. Hagemann*, 623 F.3d 975, 977–78 (9th Cir. 2010).

[104] *Id.* at 978 (alteration in original).

[105] *Id.* at 978, 981.

[106] *Id.* at 978.

[107] *Id.* at 981.

Case No. 3:18-cv-00113-SLG, *DelPriore v. McClure, et al.*
Order re Motion for Summary Judgment
Page 22 of 33

her was reasonable."[108]  The Ninth Circuit reasoned that there was "no genuine dispute from the evidence that [plaintiff] posed a threat to herself, her neighbors, and the officers" and that "the evidence [was] undisputed that [plaintiff] was actively resisting arrest."[109]  The Circuit noted that there was "no allegation that the officers punched or kicked [her] or applied knee strikes" and there was no evidence that the officers "wrenched her arms up or gratuitously intensified pain in the handcuffing process."[110]

In light of Mr. DelPriore's account of the facts, Defendants' reliance on *Luchtel* is misplaced.  In *Luchtel*, it was undisputed that the plaintiff was actively resisting arrest and was presenting as a threat to herself and others.[111]  Here, there are genuine questions as to whether Mr. DelPriore was resisting arrest or posing a threat to anyone.  Thus, the Court finds that *Luchtel* is inapposite.

In his opposition, Mr. DelPriore does not address Defendants' arguments. Instead, he maintains that the video footage from the security camera is unauthenticated and thus inadmissible.[112]  He asks the Court to make a

---

[108] *Id.* at 980.

[109] *Id.*

[110] *Id.* at 982.

[111] *Id.* at 980.

[112] Docket 70 at 3.

Case No. 3:18-cv-00113-SLG, *DelPriore v. McClure, et al.*
Order re Motion for Summary Judgment
Page 23 of 33

determination about whether the original footage was lost or destroyed and whether Defendants acted in bad faith and failed to preserve relevant evidence.[113]

In response, Defendants submitted a declaration by Andrew Halcro, the executive director of the Anchorage Community Development Authority, which operates the EasyPark parking garages.[114] Mr. Halcro represents that his office "conducted a diligent search for security video records" and located and produced the requested security video.[115] He explains that the video was "produced at the time the events or matters to which they relate occurred, and ha[d] been prepared and/or kept in the regular course of business."[116] The Court is satisfied that the video was maintained in the regular course of business and accepts it as evidence in support of Defendants' motion for summary judgment.[117]

---

[113] Docket 75 at 3.

[114] Docket 73 at 2, ¶¶ 2–3.

[115] Docket 74 at 2, ¶ 4.

[116] Docket 74 at 2.

[117] *See* F.R.E. 803(6). As mentioned *supra*, the video footage of the incident is delayed and choppy, making it difficult to follow. On December 10, 2019, the Court ordered Defendants to resubmit the video footage in a format that resolves the delay issues or to provide an explanation as to why that was not possible. Docket 78. On December 17, 2019, Defendants filed a notice that it was not possible to resolve the issues. Docket 79. The Operations Manager for EasyPark, Chris Kersbergen, filed a declaration explaining that it "will not be possible to resolve the delay issues of the security video." Docket 80 at 2, ¶ 3. According to Mr. Kersbergen, "[t]here was something incorrect in the manner in which [they] exported the footage . . . which explains the choppiness of the video footage," but that the video "is no longer available on the server" as it only holds "a maximum of thirty days of footage." Docket 80 at 2, ¶¶ 3–4.

Case No. 3:18-cv-00113-SLG, *DelPriore v. McClure, et al.*
Order re Motion for Summary Judgment
Page 24 of 33

In evaluating Mr. DelPriore's excessive force claim, the Court considers whether the police officers' actions were "objectively reasonable given the totality of the circumstances."[118] The reasonableness of the force depends on, among other things, "whether the suspect posed an immediate threat to anyone, whether the suspect resisted or attempted to evade arrest, and the severity of the crime at issue."[119]

At summary judgment, the "evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."[120] Thus, accepting as true for the purposes of this motion Mr. DelPriore's factual account, the events are as follows: Defendants McClure and Shaver asked Mr. DelPriore to leave the parking garage and he refused. With no warning or physical provocation, they slammed into him, and hit him with their elbows and knees in the head, the groin, and the stomach, causing him to fall to the ground.[121] Defendants McClure and Shaver prevented him from getting up by handcuffing him and kneeling on his back. While he was in handcuffs, Defendants McClure and Shaver "rend[ed]" Mr. DelPriore's wrist and mashed his face into the ground.[122] Mr. DelPriore did not

---

[118] *Nehad v. Browder*, 929 F.3d 1125, 1132 (9th Cir. 2019).

[119] *Id.*

[120] *Moldex-Metric, Inc.*, 891 F.3d at 881 (9th Cir. 2018) (alteration in original) (quoting *Anderson*, 477 U.S. at 255).

[121] Docket 59-9 at 11, 40:16–41:16 (DelPriore Dep.); Docket 59-9 at 24, 91:10–19 (DelPriore Dep.); Docket 1 at 6.

[122] Docket 59-9 at 26, 99:13–22 (DelPriore Dep.); Docket 1 at 6.

Case No. 3:18-cv-00113-SLG, *DelPriore v. McClure, et al.*
Order re Motion for Summary Judgment
Page 25 of 33

make any physical contact with Defendants McClure and Shaver other than to "stiff-arm" them when they closed in on him with elbow and knees.[123]

Based on Mr. DelPriore's factual account, a reasonable factfinder could conclude that Defendants' use of force was not objectively reasonable. First, the severity of the crime of trespassing is minimal. Second, according to Mr. DelPriore, he was not resisting arrest; he refused to leave the premises, but Defendants did not try to handcuff him before resorting to physical force. Third, other than his allegedly incoherent references to God, Mr. DelPriore did not behave erratically or give any other indication that he was a threat to anyone's safety; he was unarmed and non-violent. Indeed, before Defendants' arrival, Mr. DelPriore was calmly sitting on a bench.

For the foregoing reasons, Defendants are not entitled to summary judgment on Mr. DelPriore's Fourth Amendment excessive force claim.

### 4. Qualified Immunity

Finally, Defendants contend that—even assuming Defendants had violated Mr. DelPriore's First or Fourth Amendment rights—there was "no clearly

---

[123] Docket 59-9 at 23, 88:11–25 (DelPriore Dep.). Defendants maintain that after telling Mr. DelPriore he was trespassing, and asking him to leave, Mr. DelPriore "made an incoherent statement regarding God's judgment and immediately began resisting Mr. McClure and Mr. Shaver's attempts to escort him off premises" thereby "creat[ing] the impression that he was being combative." Docket 60 at 32. Defendants contend that when "Mr. DelPriore pushed Mr. Shaver, the guards determined that Mr. DelPriore put their safety and the safety of the public at risk." Docket 60 at 32. They maintain that they had to wrestle with Mr. DelPriore to secure him, and that they used the least amount of force necessary to subdue him. Docket 60 at 32–33.

Case No. 3:18-cv-00113-SLG, *DelPriore v. McClure, et al.*
Order re Motion for Summary Judgment
Page 26 of 33

established law prohibit[ing] the conduct of Mr. McClure and Mr. Shaver" and Defendants are therefore entitled to qualified immunity.[124] The Court addresses only the Fourth Amendment claim, as it has determined that Defendants are entitled to summary judgment on Mr. DelPriore's First Amendment claim.[125]

On the Fourth Amendment claim, Defendants again cite to *Luchtel*, where the Ninth Circuit held that "even if some degree of force used in subduing [the plaintiff] was excessive, a reasonable officer could have thought the force used was needed," and hence that the officers were entitled to qualified immunity.[126] Defendants rely on *Luchtel* to assert that there is "no clearly established constitutional right violated when arresting officers pin a suspect to the ground and handcuff the suspect."[127] However, as discussed above, *Luchtel* is inapposite; the plaintiff in *Luchtel* was actively resisting arrest, was presenting a threat to the officers, and was combative. Here, in contrast, each of those facts remains in dispute and thus the Ninth Circuit's holding in *Luchtel* is not controlling.

As discussed *supra*, on the first prong of the qualified immunity test, Defendants are not entitled to summary judgment on whether they violated Mr. DelPriore's Fourth Amendment rights.[128] Under the second prong, the Court asks

---

[124] Docket 60 at 34.

[125] *See supra* at 20.

[126] Docket 60 at 35–36; *Luchtel v. Hagemann*, 623 F.3d 975, 983 (9th Cir. 2010).

[127] Docket 60 at 36.

[128] *See supra* at 26.

Case No. 3:18-cv-00113-SLG, *DelPriore v. McClure, et al.*
Order re Motion for Summary Judgment
Page 27 of 33

"whether the alleged violation of [the plaintiff's] Fourth Amendment right against excessive force was clearly established at the time of the officers' alleged misconduct."[129]   Where, as here, the parties dispute material facts—namely, whether Mr. DelPriore resisted arrest or presented a threat—"summary judgment is appropriate only if Defendants are entitled to qualified immunity on the facts as alleged by the non-moving party."[130]

Accepting as true Mr. DelPriore's factual account, the Court concludes that Defendants are not entitled to summary judgment on the issue of qualified immunity because the conduct as alleged by Mr. DelPriore would have violated a clearly established right.  In *Blankenhorn v. City of Orange*, on highly similar facts, the Ninth Circuit reversed the district court's grant of summary judgment to the defendants on an excessive force claim.[131]

In *Blankenhorn*, the plaintiff, Gary Blankenhorn, was arrested on suspicion of trespass, and later charged with three counts of resisting arrest, one count of disturbing the peace, and one count of trespass.[132]   Mr. Blankenhorn brought an action under 42 U.S.C. § 1983 alleging, *inter alia*, that the police officers "used unreasonable force during the arrest by gang-tackling him, punching him, and

---

[129] *Estate of Lopez v. Gelhaus,* 871 F.3d 998, 1017 (9th Cir. 2017) (quoting *Villegas v. City of Anaheim*, 823 F.3d 1252, 1257 (9th Cir. 2016)).

[130] *Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007).

[131] *Id.* at 467.

[132] *Id.*

Case No. 3:18-cv-00113-SLG, *DelPriore v. McClure, et al.*
Order re Motion for Summary Judgment
Page 28 of 33

using hobble restraints."[133]  Although the parties disputed many of the material

facts, the plaintiff's factual account was as follows:[134]  six months prior to the

incident, the plaintiff was notified that he had been permanently evicted from the

mall.  Several weeks before the incident, one of the officers who would later arrest

the plaintiff encountered him near the scene of an alleged gang fight and

questioned him; the officer described the plaintiff as "completely calm" and

"cooperative" at that time.[135]  On the night of the incident, the plaintiff was

suspected of having committed misdemeanor trespass at the mall.  According to

Mr. Blankenhorn's version of the incident, Officer Nguyen inquired why the plaintiff

was at the mall, and he responded that he was speaking with a friend.  When Mr.

Blankenhorn tried to walk away, Officer Nguyen grabbed his arm, and Mr.

Blankenhorn "yanked out of [Officer Nguyen's] grasp."[136]  The officer then

threatened to spray him with mace, and Mr. Blankenhorn threw his driver's license

on the ground, was "angry" and "loud," and used profanity, but was otherwise not

combative.[137]  The officer asked him to kneel so he could be handcuffed, and Mr.

Blankenhorn refused.  The officer, along with another officer and a security guard,

tackled Mr. Blankenhorn.  According to Mr. Blankenhorn, they did not try to

---

[133] *Id.*

[134] *Id.* at 478–80.

[135] *Id.* at 468.

[136] *Id.* at 469 (alteration in original).

[137] *Id.*

Case No. 3:18-cv-00113-SLG, *DelPriore v. McClure, et al.*
Order re Motion for Summary Judgment
Page 29 of 33

handcuff him before they tackled him. Mr. Blankenhorn struggled for several moments before they were able to get him to the ground and handcuffed. Mr. Blankenhorn maintained that during the struggle, Officer Nguyen punched him several times, and an officer placed a knee on his neck and pressed his face to the ground. Then they placed Mr. Blankenhorn in hobble restraints.[138]

The Ninth Circuit concluded that it was reasonable for the officers to believe they had probable cause to arrest Mr. Blankenhorn for trespassing.[139] It added that "[n]either tackling nor punching a suspect to make an arrest necessarily constitutes excessive force."[140] Nonetheless, the Ninth Circuit held that if the plaintiff could prove that his version of the incident was accurate, "Defendants would probably be liable for excessive force, both in their 'gang tackling,' use of hobble restraints, and in [the officer's] punching of [the plaintiff.]"[141] Relevant here, in holding that a reasonable factfinder "could conclude the gang tackle was unreasonable," the Ninth Circuit emphasized that the "severity of the alleged crime, misdemeanor trespass, was minimal" and that other than failing to comply with the order to kneel, the plaintiff was not "actively resisting arrest" before being tackled.[142] Thus, a "rational jury could find that the use of a gang tackle . . . under

---

[138] *Id.* at 478.

[139] *Id.* at 475.

[140] *Id.* at 477 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

[141] *Id.* at 478.

[142] *Id.*

Case No. 3:18-cv-00113-SLG, *DelPriore v. McClure, et al.*
Order re Motion for Summary Judgment
Page 30 of 33

these circumstances was unreasonable."[143]   Likewise, in concluding that the officer's punches "were not necessarily a reasonable response," the Ninth Circuit noted that there was no strategic need for the strikes.[144]   Moreover, the Ninth Circuit concluded that the officers were "not entitled to qualified immunity as to the gang tackle and punches used while taking Blankenhorn into custody," reasoning that it was clearly established that "gang-tackling without first attempting a less violent means of arresting a relatively calm trespass suspect—especially one who . . . was at the moment not actively resisting arrest—was a violation of that person's Fourth Amendment rights."[145]   The Circuit added that the "same principle would also adequately put a reasonable officer on notice that punching Blankenhorn to free his arms" when it was not actually needed "was also a Fourth Amendment violation."[146]

If a jury accepts Mr. DelPriore's factual account of the incident, the Court finds that Defendants' alleged conduct in ganging up to tackle him and in striking him in the head, stomach, and groin when he was not resisting arrest and was not physically combative were violations of clearly established Fourth Amendment rights at the time of the incident.[147]   Other decisions in this Circuit (and elsewhere)

---

[143] *Id.*

[144] *Id.* at 480.

[145] *Id.* at 481.

[146] *Id.*

[147] *Blankenhorn* was decided in 2007, and the incidents in this case took place in 2018.

Case No. 3:18-cv-00113-SLG, *DelPriore v. McClure, et al.*
Order re Motion for Summary Judgment
Page 31 of 33

confirm that using "non-trivial force" on an unarmed suspect who is not resisting arrest violates clearly established Fourth Amendment rights.[148]

Therefore, based on Mr. DelPriore's factual account of the incident, (1) a reasonable factfinder could conclude that Defendants' conduct violated Mr. DelPriore's Fourth Amendment right to be free from unreasonable seizure, and (2) the Court finds that the constitutional right was clearly established at the time of the incident. The disputed facts must be resolved by the jury through the use of special interrogatories, which will determine whether the officers' actions constituted excessive force in violation of the Fourth Amendment and whether the

---

[148] *Gravelet-Blondin v. Shelton*, 728 F.3d at 1093 ("The right to be free from the application of non-trivial force for engaging in mere passive resistance was clearly established prior to 2008."). *See, e.g., Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003) (affirming denial of qualified immunity on summary judgment concluding that grabbing plaintiff by the arm, forcibly throwing her down, and twisting her arm to handcuff her where she was only passively resisting violated a clearly established right); *Burnett v. Bottoms*, 368 F. Supp. 2d 1033, 1042–43 (D. Ariz. 2005) ("[I]f Plaintiff cooperated after she was handcuffed and officers still picked her up and carried her, dropped her face down to the ground, and placed her in excessively tight handcuffs which caused her wrists to bleed and refused to loosen them upon fair notice the handcuffs were too tight or were on for an unreasonable period of time, the officers would not be entitled to qualified immunity . . . it was clearly established that a police officer was not entitled to use such force against a handcuffed, secured, cooperative prisoner or arrestee."); *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008) ("[U]nder [the plaintiff's] account of the events, she was not resisting arrest or attempting to flee when [the defendant] forcibly slammed her face into a nearby vehicle during her arrest . . . the test is clear enough that [the defendant] should have known that he could not forcefully slam [the plaintiff's] face into a vehicle when she was restrained and subdued."); *Bushell-McIntyre v. City of San Jose*, 252 Fed. Appx. 810, 811–12 (9th Cir. 2007) (concluding that jury could have found officer's force was excessive where he performed "pain compliance control hold" on plaintiff, shoved her outside, and slammed her against car even though she was "calm, sober and compliant," crime was not severe, and plaintiff did not resist arrest or pose threat).

Case No. 3:18-cv-00113-SLG, *DelPriore v. McClure, et al.*
Order re Motion for Summary Judgment
Page 32 of 33

officers are entitled to qualified immunity as a matter of law.[149]  On the present

record, Defendants are not entitled to summary judgment on the question of

qualified immunity with respect to Mr. DelPriore's Fourth Amendment claim.

## CONCLUSION

In light of the foregoing, IT IS ORDERED that Defendants Justin McClure

and Jamie Shaver's Motion for Summary Judgment at Docket 45 is GRANTED in

part and DENIED in part as follows:

> Defendants' Motion for Summary Judgment for Plaintiff's First
> Amendment Claim (Claim 3) is GRANTED.

> Defendants' Motion for Summary Judgment for Plaintiff's Fourth
> Amendment Claim (Claim 1) is DENIED.

DATED this 3rd day of January, 2020, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[149] *See, e.g.*, *Burnett*, 368 F. Supp. at 1042–43 ("How these facts are resolved by the jury through the use of special interrogatories will determine whether the officers' actions constituted excessive force in violation of the Fourth Amendment and whether the officers are entitled to qualified immunity as a matter of law.").

Case No. 3:18-cv-00113-SLG, *DelPriore v. McClure, et al.*
Order re Motion for Summary Judgment
Page 33 of 33